this morning. Case number 13-1769, USA v. Dolores Reid. Argument not to exceed 15 minutes per side. Mr. Herskovich, you may proceed for the appellant. Good morning, Your Honor. This is David Herskovich on behalf of the defendant appellant, Dolores Reid. I've requested two minutes for rebuttal, although I highly doubt I would be needing to use it. You may proceed. We're really only going to try and focus on, unless the Honorable Court has questions, on our third issue, that being the sentencing issue and peripherally the ineffective assistance of counsel as a result of Mr. Clothier, defense counsel's failure to make an attempt to even challenge any part of the scoring guidelines. Let me ask you a question before you get started on that. If for some reason you're going to concentrate on an ineffective assistance of counsel claim, as you know, we hardly ever reach these claims unless the record is sufficiently developed. And while I would agree with you that if there was a legitimate argument that could be made about what was the value that had been received here absent the kickbacks, then presumably that's something that counsel would have done, but we don't have any idea why he didn't do that. For example, he might have said to his client, here's how we can knock down this amount of the loss. You have to provide me this information and then I'll make this argument. And she said, no, I'm guilty. I should go to jail for the longest possible time. I realize this may be fanciful, but how do we know whether any of that happened? More plausibly, how do we know that the defense attorney and the assistant U.S. attorney didn't discuss this ahead of time? The government was willing to concede that, I believe, that it wasn't accounted for. To answer your question, Your Honor, if Mr. Karras were here and he's not, he would be able to tell you in person. No, no, he can't tell us in person and you can't tell us anything you know from him. It has to be in the record. That's the point. We don't have a record. How can we determine? First of all, we can't determine whether the performance was deficient because we don't know why he did or didn't do what you're claiming. And second of all, we can't determine what the prejudice is because we don't know what would have been the outcome had he done that. So it seems to me this is absolutely a classic case as to why we don't do these things in the direct appeal. The best answer I can give in regards to that is that this court has the authority to remand for an evidentiary hearing should it desire the need to do so. Why would we remand for an evidentiary hearing on IAC in a direct appeal? That's exactly the point of what happens in a collateral attack. You make your case, if there needs to be an evidentiary hearing and it's not prohibited by penholster, then you do it. We are very well aware that typically the proper time to do this is on the collateral attack, that being the 2250. So why is this the unusual case? We feel that because it's clear, yes, we don't know the reasons why he didn't do it, but it's clear and glaring that he didn't do it and that there very well could have been a major difference in terms of her scoring and therefore she could have had a major difference in terms of the amount of time in which she is... But isn't, going back to the initial proposition, isn't the record really void on many of the very things that you're contending would provide a basis for us reviewing this? And doesn't that obviate the case for this being the appropriate case to look at this issue on direct appeal? In terms of the ineffective assistance, I mean, it would be better, you know, obviously this court is of the opinion that, and I learned a long time ago not to argue with the judges. It's good policy. It's very good policy. It's got to be as far as... Well, let me suggest something else to you, counsel. One of the things that happens with an ineffective assistance of counsel claim is that it can't be renewed. And I am in the business often of suggesting when ineffective assistance of counsel is brought up on direct appeal that this may not be your client's only gripe about what happened with the attorney. But if we decide the ineffective assistance of counsel claim now... We lose it on the 20th. You lose the ability to ever raise anything else. So it really doesn't help to bring it up now and get it crippled and then find out that there might be something even stronger. I mean, in this case, all three issues kind of center around ineffective assistance of counsel. And I've always learned, I was always taught you go with what you have and the best issue you have the first time around. Well, yeah, but unless it's ineffective assistance of counsel. Right. Later on, she might want to, in fact, say it was ineffective not to raise the Batson question at trial during the jury selection. She might want to argue that. If we go now with the sentence, she's not going to be able to do that. Later on, she might want to say why wasn't there any objection raised on the Miranda question, for example. I'm forgetting now whether there was or not. There wasn't. But, yeah, so don't, you know, you don't want to put her in a position where she can't later on perhaps bring. I'm not trying to foster litigation here. I'm just trying to say. I know exactly what you're trying to do, Your Honor, and I appreciate that. And, you know, we have to go by what also our client informed us. Oh, I know. We absolutely know that. The only thing I was a little curious about is whether you had some sort of a theory by which you had a greater likelihood of getting an evidentiary hearing during the direct appeal than you would during a 2255, given the uncertainty in the Supreme Court jurisprudence as to when an evidentiary hearing is ever going to be permitted anymore in collateral review. Is that part of the problem here? A guy can dream, right? I mean, that's basically. I mean, we understand that typically it's always going to be coming down to, you know, it's a better chance with a 2255 in terms of getting an evidentiary hearing. I wouldn't assume that at all anymore. The Supreme Court has told us you can't get an evidentiary hearing if your intention is to use it to impeach the merits decision of a trial court, roughly speaking. And then in a footnote, they said, and we're not going to tell you yet what other circumstances are appropriate for an evidentiary hearing. So is that footnote and pinholster why you're pressing this in the direct appeal, or hadn't you thought of that? Honestly, I hadn't thought of that. Okay. So we can take that one off the table. We can take that off. I mean, just to step away from the ineffective, just to go to the sentencing issue in and of itself, you know, United States versus Washington, which Judge Donnell authored, indicates that in terms of the loss calculation, the loss is to be reduced by the fair market value of the services rendered to the victim. It is our contention that, and Judge Freeman even backs it up to an extent on page 11 of the sentencing transcripts, that services were provided. It wasn't as if this was a sham as was the case in Washington where the whole $3.2 million was just a whole. Everybody knew that there was a problem with the pre-sentence report. I mean, the government informed the court that the loss calculation was overstated. I mean, Clothier, on a silver platter, Mr. Clothier didn't do anything. But you concede that it's the defendant's burden to then rebut the fair market value by virtue of putting in evidence of the value. Right, which is why it goes back to why we brought the ineffective assistance of counsel in the first place. But then what happened was that the court went very downward from a 97 to 121 range to 60 months. Right. So you're saying I'm taking that into consideration. And our contention with that is had it gone down to zero, the sentencing range would have been 33 to 41. So it's entirely feasible. Had what gone down to zero? Had the point values assessed for the specific offense characteristics from Section 2B1B1F, the increments of, you know, our contention is that they got the services provided, so it should be zero as opposed to the $165,000 upon which they based the 10-point variance in terms of the sentencing guidelines, which then raised it to the 97 to 121. And had Judge Freeman obviously took things into consideration when he only gave Ms. Reed six months, five years, but our contention is had it been the 33 to 41, it's very well likely based on Judge Freeman's sense that it could have been even less than the 33 to 41, which the guidelines suggested. And it's just as likely that Judge Freeman would have said, even though there wasn't a loss, we can't have people cheating the school system, and so I'm going to vary upward to 60 months. There is that possibility also, but again, it's the unknown. It's a magical unknown in this case. All right. Your red light is not on yet, so very, very briefly, unless there's more you want to say about that IAC question. Is there any more you want to say about that? No. It just looks like your Batson challenge is absolutely dead in the water because it was waived. So how do you get over not having brought the Batson challenge on a timely basis? In other words, when the jury was still there, the veneer was still there, and the judge could have done something about it. Again, it all goes back to the ineffective assistance of counsel, especially in light that the one lone remaining African-American juror doesn't show up the first day of trial, and Mr. Collier doesn't do anything, doesn't object. It's just completely unreasonable not to do so in light of the questions presented regarding the prayer journal and what we feel was racially motivated. With all due respect, you're not answering the waiver question. So your only response to waiver is IAC? I mean, the failure to waive, yeah, is the IAC. Okay. And similarly on your Miranda challenge, I mean, that's also clearly waived by virtue of no motion to suppress. Again, ineffective assistance of counsel. And again, that's why they aren't all really properly before us, right? I plead the fifth on that one out here. All right. Do you have any questions? I don't. Judge Donald, any more questions? I have no more questions. Anything more from you then, Mr. Huskowitz? No, other than to thank you for allowing me to come before you, come down to Cincinnati and experience this beautiful courthouse. Good morning. May it please the Court, Stephanie Hayes on behalf of the United States. You know, dealing with the sentencing claim that the defendant has raised, I think at one point during his argument he said that setting the ineffective assistance of counsel claim aside, he wanted to talk about the sentencing issue. But I think the Court's aware that the claim on appeal is only that there was ineffective assistance of counsel. There's no challenge to the district court's guideline calculation. And if we look at – We're happy to hear from you because you came all the way down here. But in light of the proceedings so far, is there really much more that you want to say? No, not really, Your Honor. So do you have any questions for me or maybe Judge Donald? All right, then I'll just rest on the briefs. That's all right. Okay, all right. Judge Donald, any questions for Government Counsel? No, I have no questions in light of the previous discussion. Thank you. All right. Mr. Priskovic, do you have anything else you want to say? No, I'm going to keep my mouth shut. All right. The case then will be submitted. And please adjourn the Court.